# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO ESPINOZA BERMUDEZ, | 1:09-cv-00275-OWW-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY

On October 25, 2007, in the California Superior Court, County of Tulare, Petitioner pled no contest to manslaughter and admitted the enhancements in exchange for a guarantee that his maximum sentence would be twelve years. (CCT 227; RT 1-6.)

The trial court sentenced Petitioner to the upper term of eleven years for manslaughter, imposed a one-year consecutive sentence for the use of a firearm, and struck the gang enhancement. (CT 276, 281; RT 49-51, 55.)

Petitioner filed a timely appeal to the California Court of Appeal, Fifth Appellate District. (Lodged Doc. Nos. 1-6.) On July 14, 2008, the Court of Appeal affirmed the judgment. (Lodged Doc. No. 7.)

Petitioner filed a petition for review on August 1, 2008. (Lodged Doc. No. 8.) The petition was summarily denied on September 17, 2008. (Lodged Doc. No. 9.)

Petitioner filed the instant federal petition for writ of habeas corpus on February 12, 2009. Respondent filed an answer to the petition on December 7, 2009. Petitioner did not file a traverse.

## STATEMENT OF FACTS

> On April 8, 2003, Jose Lemus was driving in Porterville with Manuel Martinez (Manuel), Pablo Garcia, and [Petitioner] as passengers. As they drove by Francisco Martinez (Francisco), a Norteno gang member, Francisco "mad dogged" them and gestured with his hands as if to challenge them. Lemus pulled the car over and his three passengers got out. Francisco yelled "Norte" and threw a punch at Garcia. Garcia swung back striking Francisco and knocking him to the ground where he and [Petitioner] began kicking him. Garcia and [Petitioner] finished beating Francisco and were walking back to the car when Manuel pulled out a shotgun. Manuel shot Francisco in the shoulder as Francisco stood with his hands in the air as if asking Manuel not to. Manuel shot the victim two more times knocking him to the ground and killing him.

(Lodged Doc. No. 7, at 2.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding

AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

1  Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501
2  U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but
3  provided no reasoned decision, courts conduct "an independent review of the record . . . to
4  determine whether the state court [was objectively unreasonable] in its application of controlling
5  federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we
6  independently review the record, we still defer to the state court's ultimate decisions." Pirtle v.
7  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.  Sixth Amendment Violation to Right to Jury Trial

In his sole claim for relief, Petitioner contends that his right to a jury trial was violated when the trial court imposed the upper term on his voluntary manslaughter conviction based on the vulnerability of the victim without a true finding by a jury.

1.  Factual Background of Claim

After entering a plea to voluntary manslaughter and admitting the arming and street gang enhancements, Petitioner was sentenced to an aggregated term of 12 years, based on the following findings by the trial court:

> I look at this case and I see really one thread going through and that is that one of the individuals was attacked by Norte[n]os over by the Tule River. Subsequent to that, this group went to another town, Terra Bella, Pixley, one of those towns, picked up a shotgun and went out, as I recall, going towards a place where they thought Norte[n]os hung out. There were none to be found. They found an individual with a red shirt, dressed in red colors, walking down the street. They slowly went by. Once he claimed red, the three individuals, including the defendant, got out and beat him. Beat him to the ground. Subsequent to that he was shot.
>
> And there is one overriding factor here in aggravation, and that is this victim was vulnerable. He was walking down the street minding his own business when these individuals came up and attacked him brutally, for no other reason than his colors, his perceived gang association. So I find the factor in aggravation, in my opinion, outweighs everything, and that is the senselessness, the vulnerability of this individual with this attack by this defendant and his cohorts. [¶] ... [¶]
>
> I find there is that factor in aggravation that outweighs any factors-other factors in aggravation or mitigation.

(RT dated 10/25/07, at 49-50.)

2.      Last Reasoned Decision of California Court of Appeal

In the last reasoned decision of the California Court of Appeal, Fifth Appellate District, the claim was rejected as follows:

> Bermudez contends the court committed *Cunningham* error because it imposed the upper term on his voluntary manslaughter conviction based on the vulnerability of the victim, a circumstance that was not found true by a jury. We disagree.
>
> "In *Apprendi* [ *v. New Jersey* (2000) 530 U.S. 466], the Supreme Court held, 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.] In *Blakely* [*v. Washington* (2004) 542 U.S. 296], the United States Supreme Court held that '[t]he "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' [Citation.]" (*In re Saade* (2008) 162 Cal.App.4th 1391, 1396.)
>
> In *Cunningham,* the Supreme Court found California's former Determinate Sentencing Law (hereafter DSL) (former Pen.Code, § 1170) unconstitutional. In discussing the former DSL the *Cunningham* court stated,
>
> "Under California's DSL, an upper term sentence may be imposed only when the trial judge [found] an aggravating circumstance.... An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, [did] not qualify as such a circumstance. [Citation.] Instead, aggravating circumstances depend on facts found discretely and solely by the judge.... [T]herefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. [Citation] ('[T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*' (emphasis in original). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, [citation], the DSL violates *Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.] [¶] ... [¶]" (*Cunningham v. California, supra,* 127 S.Ct. at p. 871, italics added.)
>
> The Legislature has since amended the DSL (Pen.Code, § 1170) in response to *Cunningham* to give trial courts genuine discretion within a statutory sentencing range consisting of three terms. (See, Stats.2007, ch. 3, § 2, eff. March 30, 2007.) In *People v. Sandoval* (2007) 41 Cal.4th 825, our Supreme Court implicitly found Penal Code section 1170, as amended, constitutional. In *Sandoval,* after finding that the trial court erred in imposing the upper term, the court rejected the Attorney General's suggestion that it reform California's former DSL law, under which the defendant had been sentenced, "to afford the trial court 'broad

5

discretion' in selecting among the three terms specified by statute for the offense, subject to the requirements that the court consider the aggravating and mitigating circumstances as set out in statutes and rules and that reasons be stated for the choice of sentence. Under the Attorney General's proposed reformation, an upper term sentence would be authorized by the jury's verdict without any requirement of additional factfinding by the judge." (*People v. Sandoval, supra,* 41 Cal.4th at pp. 843-844.)

The court also stated,

> "This reformation of the DSL would cure the constitutional defect in the statute, because the United States Supreme Court repeatedly has made clear in the line of decisions culminating in *Cunningham* that it 'ha[s] never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. [Citations.] ... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.' [Citations.]"

The *Sandoval* court, however, found it unnecessary to amend California's former DSL. Instead, it implicitly found the new DSL constitutional stating:

> "In the present case, however, it is unnecessary for us to decide whether the statute should be judicially reformed to render it constitutional because, while this case was pending, the California Legislature amended the DSL in substantially the same manner proposed by the Attorney General. (Stats.2007, ch. 3.)[¶] ... [¶]
>
> "Under the former scheme, the trial court was required to state reasons for imposing the upper or lower term, but not the middle term. [Citation.] Under the amended scheme, a statement of reasons is required even if the middle term is imposed. [Citation.] The reasons, however, no longer must 'include a concise statement of the ultimate facts that the court deemed to constitute circumstances in aggravation or mitigation.' [Citation.]" (*People v. Sandoval, supra,* 41 Cal.4th at pp. 845, 847, fn. omitted.)

Here, the court sentenced Bermudez in October 2007, after the amendment of California's DSL. Further, since the constitutionality of the amended DSL was upheld by the court in *Sandoval,* we reject Bermudez's contention that the court erred in imposing the upper term on his manslaughter conviction because it relied on facts that were not found true by a jury.

*The Court did not Abuse its Discretion when it Imposed the Upper Term*

The court imposed the upper term based on its finding that the victim was particularly vulnerable. Bermudez contends the court abused its discretion in imposing the aggravated term because its finding that the victim was particularly vulnerable is not supported by the record. We disagree.

We review the trial court' sentencing decision for abuse of discretion. (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) The court's sentencing choice will be upheld unless defendant shows the sentence was arbitrary or irrational. (*People v. Hubbell* (1980) 108 Cal.App.3d 253, 260.)

>The vulnerability of a victim is a proper consideration in sentencing a defendant. (California Rules of Court, rule 4.421(a)(3).) "[A] 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. An attack upon a vulnerable victim takes something less than intestinal fortitude. In the jargon of football players, it is a cheap shot.' [Citation.] [Rule 4.421(a)(3)] has thus far been applied exclusively in criminal cases involving violent felonies, where the age or physical characteristics of the victim, or the circumstances under which the crime is committed, make the defendant's act especially contemptible." (*People v. Bloom* (1983) 142 Cal.App.3d 310, 321-322.)
>
>Here, the victim was alone when he was confronted by Bermudez, Garcia, and Manuel. After Garcia and Bermudez finished viciously kicking the victim as he lay on the ground, the victim managed to get up, undoubtedly dazed from the beating, and Manuel pointed the shotgun at him. As the victim held his hands up in an act of surrender, Manuel fired three shots at the victim, killing him. These circumstances support the court's imposition of the aggravated term based on its conclusion that the victim was particularly vulnerable because they show the victim was unarmed and outnumbered and by the time Francisco pointed the shotgun at him he was incapable of defending himself or fleeing because of the beating he had just endured.
>
>Bermudez cites *People v. Levitt* (1984) 156 Cal.App.3d 500, to argue that the victim should not be deemed particularly vulnerable because he was responsible for instigating the altercation. In *Levitt* the court found that the victim who was shot and killed by the defendant was particularly vulnerable because he was caught unaware by the defendant and did nothing to provoke or partially excuse the defendant's conduct. (*Id.* at p. 515.) The court, however, did not hold that a victim cannot be found to be particularly vulnerable if his conduct in any way leads to the victim being assaulted. Instead, the absence of any provocation by the victim in *Levitt* led the court to conclude that the victim was particularly vulnerable because he was caught by surprise, thus limiting his ability to protect himself from the defendant.
>
>Here, the victim's gang member status and his conduct in "mad dogging" the defendant and his cohorts may have made him a less sympathetic victim. It did not, however, ameliorate the effect of the circumstances cited above that made the victim particularly vulnerable. Thus, we conclude that the court did not abuse its discretion when it relied on the vulnerability of the victim to impose the aggravated term.

(Lodged Doc. No. 7, Opinion, at 2-5) (footnote omitted.)

        3.      <u>Analysis</u>

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because

7

of race, color, gender, handicap, religion, sexual orientation, or ethnicity." Apprendi v. New Jersey, 530 U.S. at 469. The Supreme Court reversed, holding that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to jury, and proved beyond a reasonable doubt." Id. at 490. (Emphasis added.)

In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Court explained that the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum " is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." Id. at 303-304.

In both Apprendi and Blakely, state law established an ordinary sentencing range for the crime the defendant was convicted of committing, but allowed the court to impose a sentence in excess of that range if it determined the existence of specified facts not intrinsic to the crime. In each case the Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt.

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 788 (2005), the Court applied its holding in Blakely to the Federal Sentencing Guidelines, finding the Guidelines unconstitutional. In reforming the Guidelines, the Court stated "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." Id. at 233. "For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id.

In People v. Black, 35 Cal. 4th 1238 (June 20, 2005), the California Supreme Court held that California's Determinative Sentencing Law satisfied federal constitutional law as follows: "*Blakely* and *Booker* established a constitutionally significant distinction between a sentencing

scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense." People v. Black, 35 Cal.4th at 1253. "[I]n operation and effect, the provisions of the California determinate sentence law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." Id. at 1254. The Court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. Id. at 1261.

In Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007), the Supreme Court overruled the holding in Black, and held that the middle term in California's determinate sentencing law was the relevant statutory maximum for the purpose of applying Blakely and Apprendi. Id. at 868. Specifically, the Court held that imposing the upper sentence violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." Id. at 860.

The California Legislature amended the DSL in response to Cunningham. People v. Sandoval. 41 Cal.4th 825, 836, fn. 2 (2007). More specifically, it adopted "Cunningham's suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term." People v. Wilson, 164 Cal.App.4th 988, 992 (2008).

The amendments to the DSL allow the trial court broad discretion under section 1170(b), to select among the lower, middle, and upper terms specified by the statute without stating the ultimate facts deemed to be aggravating or mitigating and without weighing the aggravated and mitigating factors. Sandoval, 41 Cal.4th at 847. As of March 30, 2007 (effective date of

amendment) the "trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions." Id. at 848. In Sandoval, the Court held the trial court could constitutionally apply the amended version of the DSL to all sentences imposed *after* the effective date, even if the offense was committed *prior* to the effective date. Id. at 845-857. Thus, because Petitioner was sentenced on October 25, 2007, after the amendment took effect, the trial court's imposition of the upper term without a jury trial finding of fact did not violate Petitioner's Sixth Amendment right, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

## RECOMMENDATION

Accordingly, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 21, 2010**                         /s/ Sandra M. Snyder
                                                          UNITED STATES MAGISTRATE JUDGE